JOHN ORTIZ, CITY LINE AUTO          :
COLLISION, LLC, ET AL.,


v.                                  :      No. 3:07-cv-1144 (AHN)

TOWN OF STRATFORD, MAYOR
JAMES MIRON, ET AL.                 :

RULING ON MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTIONS TO STRIKE

     John Ortiz and his towing company, City Line Auto Collision,

LLC and City Line Auto Body, LLC (collectively, "plaintiffs")

have sued the Town of Stratford and various Stratford police

officers and officials pursuant to 42 U.S.C. § 1983, alleging

false arrest, malicious prosecution, retaliation, and a violation

of procedural due process.  Presently before the court are the

defendants' motions for summary judgment [doc. #35, 46], the

defendants' motion to strike [doc. # 61] and the plaintiffs'

motion to strike [doc. # 67].

                              FACTS

     The following facts are not in dispute.  Plaintiff John

Ortiz ("Ortiz") owns City Line Auto Collision, LLC and City Line

Auto Body, LLC, located in Stratford, Connecticut.  The

businesses are engaged in towing vehicles.  The Town of Stratford

has an ordinance that allows it to create a list of approved

towing companies that can be called on a rotating basis to

perform nonconsensual towing of vehicles that are abandoned,

stolen or immobilized due to an accident within the town limits.

The towing ordinance provides that, to be on the town's official towing list, towing companies must comply with certain qualifications and conditions, such as signing a written agreement with the town, and must pay a yearly fee of $2,500. Pursuant to that ordinance, the Stratford Police Department issued Town Policy No. P961204 ("the Policy") on December 15, 1996, which sets forth rules and requirements that the towing companies on the list must follow. The Policy has been continuously in effect since its issuance in 1996. The Policy provides in part that "[t]he Chief of Police may, for cause, suspend or revoke from the Towing List any Tow Operator who violates any provision of the policy, State Law or Town Ordinance . . . ." In 2007, there were approximately eight or nine towing companies on the list. Two of those companies were City Line Auto Collision, LLC and City Line Auto Body, LLC. Neither company entered into a written agreement with the town.

On September 20, 2006, two wreckers from City Line Auto Body were dispatched to tow cars involved in an accident at 7365 Main Street in Stratford. Ortiz drove one of the wreckers and Abraham Santiago ("Santiago"), Ortiz's son-in-law, drove the other. Stratford police officers Corporal David Gugliotti ("Cpl. Gugliotti") and Officer Paul Honafius responded to the accident scene. They were later joined by Stratford Police Sergeant Orlando Soto ("Sgt. Soto"). Prior to Sgt. Soto's arrival,

however, there was a dispute between Ortiz and Cpl. Gugliotti regarding towing laws and fees.

Later that day, Ortiz filed a sworn citizen complaint against Cpl. Gugliotti based on his conduct at the accident scene. In his complaint, Ortiz alleged, among other things, that Cpl. Gugliotti told him that he had to tow one of the disabled vehicles to the vehicle owner's home. Ortiz stated that when he refused to do so, Cpl. Gugliotti told him to unhook the vehicle from the wrecker and Cpl. Gugliotti would call the next towing company on the list to remove the vehicle. Ortiz further alleged that Cpl. Gugliotti was rude and abusive to him and seemed out of control.

The Stratford Police Department conducts internal investigations into citizen complaints filed against officers in its department when the complaints allege misconduct, inappropriate behavior or violations of department policies. Stratford Police Chief Michael Imbro ("Chief Imbro") received a copy of Ortiz's complaint. In approximately November 2006, he assigned Captain Mark DeLieto ("Capt. DeLieto") to perform the internal affairs investigation. At approximately the same time, Captain Maxwell sent Cpl. Gugliotti a memo to notify him that he was the subject of the investigation. The memo stated in part: "It is alleged that you were rude and spoke inappropriately to John Ortiz who had been operating a duty wrecker at an accident

you had been assigned to."

As part of the internal affairs investigation, Capt. DeLieto took a sworn statement from Ortiz on December 7, 2006 regarding the incident. When Cpl. Gugliotti was talking to the driver and Ortiz tried to intervene, Ortiz stated that Cpl. Gugliotti said, "John, shut the fuck up and go sit in your truck." Later, Ortiz got a call from police dispatch that a police cruiser at the scene would not start. When Ortiz went over to Cpl. Gugliotti's police cruiser to jump the battery, Ortiz stated that Cpl. Gugliotti told him, "you ain't touching my fucking car."[1]

On December 1, 2006 Capt. DeLieto took a sworn written statement from Santiago, the other tow truck driver at the accident scene. In his statement, Santiago stated that when Ortiz went over to the squad car to jump its battery, Cpl. Gugliotti swore at him, stating, "You're not touching my fucking car."

Next, Capt. DeLieto interviewed Cpl. Gugliotti about the incident. Cpl. Gugliotti denied that he used any profanity and offered Capt. DeLieto a tape recording he made of the incident that he had copied onto a CD-ROM.

Capt. DeLieto issued an Incident Report and Narrative

---

[1] Ortiz has abandoned his claim in his complaint that Capt. DeLieto altered his sworn statement in any way. He now asserts that the statement that Capt. DeLieto typed and he signed is correct. (Ortiz Dep. 55-56).

Supplement at the conclusion of the internal investigation on December 26, 2006, which summarized the investigation and his conclusions. Capt. DeLieto divided his report into two parts. First, Capt. DeLieto noted that Cpl. Gugliotti provided "erroneous information" to one of the drivers involved in the accident because Cpl. Gugliotti told the driver that the wrecker had to "tow his vehicle to his home." Capt. DeLieto concluded from the recording that Cpl. Gugliotti created "unnecessary animosity at the scene by telling Mr. Ortiz that he had to unhook Mr. Bray's vehicle from his tow truck because he (Gugliotti) was going to be calling a different wrecker service, all because Mr. Ortiz would not tow it to the owner's home" though Ortiz was not obligated by law to do so. Capt. DeLieto also concluded that Ortiz was acting properly in towing the vehicle, but after Cpl. Gugliotti imparted misinformation, things "escalated into a scenario requiring a supervisor to respond." Finally, Capt. DeLieto found that Cpl. Gugliotti gave incorrect information to the dispatcher when he stated that Ortiz would not turn over the vehicles to their owners.

In the second part of his incident report, after listening to Cpl. Gugliotti's recording, Capt. DeLieto concluded that, contrary to Ortiz's and Santiago's sworn statements, Cpl. Gugliotti did not use any profanity during his encounter with Ortiz. Capt. DeLieto also noted that Cpl. Gugliotti's recording

of the incident constituted "irrefutable proof" that Cpl. Gugliotti did not swear at Ortiz.

On March 2, 2007, Capt. DeLieto completed and signed affidavits in support of applications for the issuance of arrest warrants for both Ortiz and Santiago for making false statements in violation of Conn. Gen. Stat. § 53a-157b. On March 9, 2007, Connecticut Superior Court Judge Michael Maronich issued a warrant for Ortiz's arrest.

During Capt. DeLieto's internal affairs investigation, Deputy Chief Joseph LoSchiavo ("Dep. Chief LoSchiavo") learned that Capt. DeLieto had concluded that the facts and circumstances were sufficient to establish probable cause to arrest Ortiz and Santiago. Dep. Chief LoSchiavo was also aware that Capt. DeLieto had applied for the warrants and that they had been issued by a judge and executed.

At the time of the investigation, Capt. DeLieto had been a member of the Stratford Police Department for approximately 27 years and was familiar with the standard for probable cause necessary to issue arrest warrants. During his time with the department, Capt. DeLieto had made numerous arrests, applied for arrest warrants and attended classes covering the subject. Conn. Gen. Stat. § 53a-157b provides:

(a) A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false

statements made therein are punishable, which he does
not believe to be true and which statement is intended
to mislead a public servant in the performance of his
official function.

(b) False statement in the second degree is a class A
misdemeanor.

On March 26, 2007, then-Chief Imbro directed Dep. Chief LoSchiavo
to send a letter to Ortiz informing him that his towing contract
with Stratford was suspended "effective immediately" and that his
companies were removed from the Stratford towing list.[2]  The
letter also notified Ortiz that "you may appeal your suspension
to the Mayor in writing within 10 days of receipt of this
letter."  The plaintiffs appealed the decision on March 28, 2007,
by separate letters from attorneys Robert Golger and John
Williams.

In a letter dated May 3, 2007, Mayor James Miron ("Mayor
Miron") appointed Attorney Paul R. Karl ("Karl") to serve as
hearing officer to hear the plaintiffs' appeal.  The hearing
began on June 8, 2007 and lasted several days.  During the
hearing, the plaintiffs were represented by counsel, called

---

[2] Defendant John Burturla became Stratford Police Chief on
March 31, 2007, after the plaintiffs' towing contract was
suspended and his companies were removed from the towing list.
Chief Burturla did not participate in those decisions.  Ortiz
admitted that Chief Burturla has nothing to do with this lawsuit.
(D - Ortiz depo p. 98.)  The complaint does not allege that
Ortiz's First Amendment rights were chilled as a result of the
alleged conduct of Dep. Chief Loschiavo or Mayor Miron in
relation to the plaintiffs' suspension and removal from the
towing list.

witnesses to testify, presented evidence and made arguments.  On
or about August 15, 2007, Karl issued his decision denying the
plaintiffs' appeal.  The plaintiffs filed an administrative
appeal with Mayor Miron and then filed this lawsuit.

Ortiz reports the income of both of his towing companies as
"City Line Towing" on Schedule C of his federal income tax
return.  Neither of the companies reports any profits or losses.
Ortiz alleges that he lost over $600,000 in gross revenue from
his companies as a result of his removal from the towing list.
He bases that figure on information provided by his accountant.
However, Ortiz's accountant cannot state an opinion to a
reasonable degree of accounting certainty what the towing
companies' profits or losses for 2007 would have been had they
remained on the towing list.  Revenues from towing fluctuate from
month-to-month and year-to-year due to factors such as weather
and the number of auto accidents.

I.   Cross-Motions to Strike

Both parties move to strike certain exhibits from
consideration on the motions for summary judgment.  The
defendants move to strike two of the plaintiffs' exhibits.  One
is a letter from Robert Gulash ("Gulash"), plaintiffs' counsel in
the underlying state criminal case, addressed to John Williams,
plaintiffs' counsel in this case.  The second is Ortiz's brief in
support his motion to dismiss the state charges pursuant to

Franks v. Delaware, filed in the state criminal case.  The
plaintiffs move to strike two of the defendants' statements of
material fact.  Both statements pertain to Ortiz's towing
businesses and proof of damages.

A motion to strike is an appropriate manner for a party to
challenge an affidavit that the opposing party submitted in
support of a summary judgment motion.  See Newport Elecs., Inc.
v. Newport Corp., 157 F. Supp. 2d 202, 208 (D. Conn. 2001); cf.
Dragon v. I.C. System, Inc., 241 F.R.D. 424, 426 (D. Conn. 2007).

A.    Defendants' Motion to Strike

The defendants argue that Gulash's letter to plaintiffs'
counsel is hearsay and was filed without a supporting affidavit.
However, the plaintiffs argue that they could present the
evidence in another form at trial that would be admissible.

Local Rule 56(a)3 states in part: "[E]ach denial in an
opponent's Local Rule 56(a)2 Statement must be followed by a
specific citation to (1) the affidavit of a witness competent to
testify as to the facts at trial and/or (2) evidence that would
be admissible at trial."  See D. Conn. Civ. R. 56(a)3.  Indeed,
"[t]he principles governing admissibility of evidence do not
change on a motion for summary judgment . . . . Therefore, only
admissible evidence need be considered by the trial court in
ruling on a motion for summary judgment."  Raskin v. Wyatt Co.,
125 F.3d 55, 66 (2d Cir. 1997); see Weltz v. City of New York,

9

No. 99 Civ. 3932, 2004 WL 1907309, at *5 (S.D.N.Y. Aug. 25, 2004)
(unsworn letters prepared by a physician are inadmissible hearsay
and the court may not considered them in opposition to a motion
for summary judgment).  However, "[a]ffidavits submitted to
defeat summary judgment must be admissible themselves <u>or</u> must
contain evidence that will be presented in an admissible form at
trial."  <u>Santos v. Murdock</u>, 243 F.3d 681, 684 (2d Cir. 2001)
(emphasis added) (citing <u>Celotex Corp.</u>, 477 U.S. at 324 (stating
that nonmoving party need not "produce evidence in a form that
would be admissible at trial" but must "by her own affidavits . .
. designate specific facts showing that there is a genuine issue
for trial")).

> Gulash's letter states:
>
> [Assistant State's Attorney Charles Stango] stated in
> open court that he believed that a nolle was
> appropriate based on the facts recited in the Motion to
> Dismiss and Request for a Franks hearing filed by the
> Defendant.  He also stated that in addition, he did not
> believe the State could prove its case due to
> credibility issues with its witness (Corporal
> Gugliotti).

The letter is not attached to or referenced in an affidavit
swearing to its contents as required in D. Conn. Civ. R. 56(3).
Further, the statements in the letter refer to statements made by
yet another individual, and thus constitute double hearsay.  <u>See</u>
<u>United States v. Yousef</u>, 327 F.3d 56, 153 (2d Cir. 2003)(noting
that double hearsay occurs when a party offers "an out-of-court
statement assertedly repeating another out-of-court statement

being offered by [a party] for the truth of the matter asserted"). The plaintiffs cannot explain how they would present this evidence in an admissible form at trial. Accordingly, the motion to strike is granted as to Gulash's letter.

In addition, the defendants argue that the plaintiffs cannot offer the brief they filed in state court in support of Ortiz's motion to dismiss on a <u>Franks</u> violation to support their motion for summary judgment because it is not evidence relevant to any issue in the case. The defendants counter that the brief is relevant to the issue of whether there was a <u>Franks</u> violation and whether Capt. DeLieto is entitled to qualified immunity.

But the state court did not rule on the <u>Franks</u> motion. The motion is simply a compilation of Ortiz's arguments to the state court and nothing more. As such, it is irrelevant to this case and the plaintiffs have failed to show that it is admissible evidence. Accordingly, the court grants the defendants' motion to strike in its entirety.

B.  <u>Plaintiffs' Motion to Strike</u>

The plaintiffs move to strike two of the defendants' statements of material fact. Both statements pertain to Ortiz's towing businesses:

> 72.  Despite the fact that City Line Auto Collision, LLC and City Line Auto Body, LLC operated a total of at least six and possibly as many as eight tow trucks . . . for 2007, Ortiz did not issue any Form 1099s nor file any W-2's on behalf of any individuals who performed any work or labor for City Line Auto Collision, LLC or

11

City Line Auto Body, LLC.

> 76. Any opinion as to the damages, if any, caused to
> the plaintiffs as a result of City Line Auto Collision,
> LLC and City Line Auto Body, LLC being suspended and
> removed from the towing list would be speculative.

The plaintiffs argue that this information is irrelevant to the case and is more prejudicial than probative. The defendants argue that the statements are relevant to the issue of damages, which they raise in their motion for summary judgment.

The court need not reach the merits of the plaintiffs' motion to strike because, even without those statements before the court, the defendants are entitled to summary judgment on all of their claims. Accordingly, the motion is denied as moot.

## II. Motion for Summary Judgment

The defendants move for summary judgment as to all of the plaintiffs' claims. They argue that the individual defendants are entitled to qualified immunity and the court should grant summary judgment with respect to the plaintiffs' Monell claim.[3] The plaintiffs argue that Ortiz's arrest was without probable cause and the defendants retaliated against them for filing a civilian complaint against Cpl. Gugliotti. For the reasons that follow, the motion is granted in part and denied in part.

---

[3] Monell v. Dep't of Social Services of New York, 436 U.S. 658 (1978) (allowing municipalities to be sued for constitutional violations under § 1983).

Summary judgment should be granted if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 36 (2d Cir. 1994); Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and all ambiguities and inferences that may reasonably be drawn from the facts must be viewed in the light most favorable to the nonmoving party, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248. A disputed issue is not created by a mere allegation in the pleadings, <u>Applegate v. Top Assoc., Inc.</u>, 425 F.2d 92, 96 (2d Cir. 1970), or by surmise or conjecture, <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1980). Conclusory assertions also do not create a genuine factual issue. <u>Delaware & Hudson Ry. Co. v. Conrail</u>, 902 F.2d 174, 178 (2d Cir. 1990). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving

party's case." Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

## DISCUSSION

The defendants argue that the plaintiffs' claims of false arrest and malicious prosecution are unfounded because probable cause existed for Ortiz's arrest.[4]  In addition, they argue that the individual defendants are entitled to qualified immunity. The defendants also assert that the plaintiffs' claim of retaliation for exercising their First Amendment rights is unfounded because the plaintiffs' speech was not chilled. Further, they argue that none of the defendants were personally involved in Ortiz's removal from the towing list.  Finally, the defendants argue that the plaintiffs were not deprived of a property interest without due process because they have no property interest in being on the towing list.  Even if they have a property interest, the defendants argue, the plaintiffs received a full and fair hearing and all the process they were due.

The plaintiffs counter that Capt. DeLieto is not entitled to qualified immunity because the prosecutor declined to pursue the charges against Ortiz due to the unlawful nature of the arrest warrant application.  The plaintiffs also contend that Ortiz's

---

[4] Santiago is not a plaintiff in this case and therefore the court refrains from discussing his arrest and prosecution.

arrest and their removal from the towing list were orchestrated by town officials in retaliation for filing a civilian complaint, and their removal from the list also deprived them of due process. Therefore, they argue, the individual defendants are not entitled to qualified immunity.

A.    False Arrest

The plaintiffs argue that Stratford police falsely arrested Ortiz in conjunction with his civilian complaint. The plaintiffs allege that in Capt. DeLieto's affidavit, he omitted information about Ortiz's civilian complaint and the internal affairs investigation of the confrontation between Cpl. Gugliotti and Ortiz. The plaintiffs argue that if Capt. DeLieto had included this information, the judge would not have found that probable cause existed to issue a warrant for Ortiz's arrest. The defendants counter that Ortiz's arrest was lawful and the omitted information was immaterial to the determination of probable cause. The court agrees.

A claim of false arrest in violation of § 1983 is governed by state law. See Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). In Connecticut, an essential element of false arrest is

the absence of probable cause.[5]  Id.  Probable cause exists if

the arresting officer has "knowledge or reasonably trustworthy

information sufficient to warrant a person of reasonable caution

in the belief that an offense has been committed by the person to

be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir.

2000) (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 119

(2d Cir. 1995).  In addition, "it is well-established that a law

enforcement official has probable cause to arrest if he received

---

[5] Another important prerequisite to bringing a false arrest
or malicious prosecution claim is whether the criminal charges
were terminated in the plaintiff's favor.  The Second Circuit has
yet to rule on whether a nolle is a "favorable termination" for
the plaintiff such that § 1983 claims for false arrest and
malicious prosecution can be brought.  See Russo v. City of
Bridgeport, 479 F.3d 196, 204 n.9 (2d Cir.), cert. denied, --
U.S. --, 128 S. Ct. 109 (2007) (explaining that, because the
plaintiff was unable to show that his arrest lacked probable
cause, the court avoided the need to decide whether a nolle was a
favorable termination of the criminal charges in the plaintiff's
favor).  Russo also noted the tension in Connecticut law on this
issue: "Compare, e.g., Holman v. Cascio, 390 F. Supp. 2d 120,
125-26 (D. Conn. 2005) (holding that the context of the
prosecutor's decision to enter a nolle  matters, and that such a
decision does not, per se, preclude initiation of a false arrest
suit in federal court) with Birdsall v. City of Hartford, 249 F.
Supp. 2d 163, 171 (D. Conn. 2003) (holding that a prosecution
resulting in a nolle is not a favorable termination for the
purpose of a false arrest claim)." However, in St. Paul v.
Griffin, No. 4001817, 2006 WL 2773418 (Conn. Super. Ct. Sept. 12,
2006), the court explained that "a nolle of the criminal charge
may still permit the plaintiff to satisfy that element [of
favorable termination] if the circumstances of the nolle satisfy
the See v. Gosselin test of 'an abandonment of the prosecution
without request from or by an arrangement with [the defendant].'
St. Paul, 2006 WL 2773418 at *3 (citing See v. Gosselin, 133
Conn. 158, 159 (1946)).  Viewing the evidence in a light most
favorable to the nonmoving party, the court considers the nolle a
favorable termination for purposes of this ruling.

his information from some person, normally the putative victim or eyewitness. . . ." <u>Miloslavsky v. AES Eng'g Soc'y</u>, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993).

When a warrant is issued by a neutral magistrate, there is a presumption of probable cause that creates a "heavy burden" for a plaintiff who seeks to prove otherwise. <u>See</u> <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991). A plaintiff can overcome that burden only if he can make a "substantial preliminary showing" that the affiant knowingly or recklessly omitted material information "necessary to the finding of probable cause." <u>Id.</u> at 870-71 (quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978)).[6] Such omissions can serve as the basis for a challenge pursuant to the standard set forth in <u>Franks v. Delaware</u>. <u>See</u> <u>Rivera v. United States</u>, 928 F.2d 592, 604 (2d Cir. 1991). The reckless nature of the omission can be inferred if the information would have been "clearly critical" to determining whether probable cause existed. <u>Id.</u>

The omissions on which the plaintiffs rely to overcome the

_____

[6] Deciding whether certain omitted information is material or not in the context of a motion for summary judgment is a mixed question of law and fact. <u>See, e.g., TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 450 (1976). The legal element "depends on whether the information is relevant to a given question in light of the controlling substantive law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The factual element requires "an inference as to whether the information would likely be given weight by a person considering that question." <u>Golino</u>, 950 F.2d at 871.

presumption of probable cause is Capt. DeLieto's failure to make reference in his affidavit to the department's full investigative report and Ortiz's civilian complaint. Determination of whether this omitted information would have been relevant to probable cause is made by utilizing the "corrected affidavits doctrine." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). This doctrine allows the court to insert into the affidavit the information that was withheld and then determine whether as a matter of law adding the information would have altered the judge's finding of probable cause. Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir. 1992); see Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993). If, after considering the omitted information, the court determines that probable cause remains, then "no constitutional violation of the plaintiff's Fourth Amendment rights has occurred." Soares, 8 F.3d at 920.

Application of the corrected affidavits doctrine here does not help Ortiz. To the contrary, adding the omitted information would not have altered the conclusion reached by Judge Maronich that probable cause existed to support a warrant for Ortiz's arrest. First, Capt. DeLieto stated in the affidavit that Ortiz's false, sworn statements were made in conjunction with his civilian complaint against a police officer. Second, including specific information about Ortiz's civilian complaint would not have changed the result because the complaint conflicts with his

18

sworn statement as well as with the audio recording of his encounter with Cpl. Gugliotti. As such, his civilian complaint contributes further to a reasonable belief that Ortiz's sworn statement is false. In addition, further information about the department's internal affairs investigation report was irrelevant and thus would not have changed the probable cause determination as to whether Ortiz made false statements.

Moreover, the manner in which Capt. DeLieto prepared his report specifically divided his findings into two parts: The first part addressed Ortiz's complaint that Cpl. Gugliotti provided incorrect and inaccurate information regarding towing laws and fees, while the second part addressed Ortiz's allegations that, during this conversation, Cpl. Gugliotti used profanity and directed it at him. The first part of the report, in which he found that Cpl. Gugliotti had caused "unnecessary animosity" at the scene because he was imparting inaccurate information to the driver, was wholly inconsequential to the second part of the report, where Capt. DeLieto determined that Ortiz's version of events were vastly different than those heard on the recording provided by Cpl. Gugliotti. For instance, instead of saying "you ain't touching my fucking car," when Ortiz offered to jump the battery of Cpl. Gugliotti's patrol car, Capt. DeLieto noted that Cpl. Gugliotti simply said "No, thank you," which Ortiz repeats back, apparently in disbelief. Capt. DeLieto

included this specific information from his investigation in his affidavit. The first part of the report regarding Cpl. DeLieto's mistaken recitation of towing laws simply is not "clearly critical" to a finding of probable cause because it had nothing to do with Ortiz's untruthful statements.

Accordingly, even with the omitted information included in the affidavit, the judge would have found that probable cause existed to issue a warrant for Ortiz's arrest. Because the arrest was supported by probable cause, the plaintiffs' § 1983 claim based on false arrest fails as a matter of law.

B. <u>Malicious Prosecution</u>

In support of his § 1983 claim for malicious prosecution, Ortiz argues that because the state prosecutor decided to issue an unconditional <u>nolle prosequi</u>, the defendants had no basis to charge him with misdemeanor false statement. The defendants counter that the prosecutor's decision not to proceed with the case is immaterial to whether there was probable cause to support the charges against Ortiz.

As with a § 1983 claim based on false arrest, a claim based on malicious prosecution is also governed by state law, and one essential element of malicious prosecution under Connecticut law is the absence of probable cause. <u>See</u> <u>Cook v. Sheldon</u>, 41 F.3d 73, 79 (2d Cir. 1994) ("Though section 1983 provides the federal claim, we borrow the elements of the underlying malicious

prosecution tort from state law."); <u>Falls Church Group, Ltd. v.</u>
<u>Tyler, Cooper & Alcorn, LLP</u>, 281 Conn. 84, 94 (2007)("The
existence of probable cause is an absolute protection against an
action for malicious prosecution.") (citations omitted).  In
addition, "[t]he mere act of charging someone with . . . filing a
false report does not in itself constitute a constitutional
infringement."  <u>Magnotti v. Kuntz</u>, 918 F.2d 364, 368 (1990).

As discussed above, Capt. DeLieto had probable cause to seek
a warrant for Ortiz's arrest for making false statements after he
compared Cpl. Gugliotti's recording with Ortiz's sworn statement.
Moreover, although Ortiz moved to dismiss the state court charges
pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the state
court did not rule on the motion because the prosecutor elected
to dismiss the case.  <u>Franks</u> and its progeny instruct that if a
court finds that material information was omitted from an
affidavit, then no probable cause existed to issue the warrant.
<u>See</u> <u>Franks</u>, 438 U.S. at 155-56; <u>Cartier v. Lussier</u>, 955 F.2d 841,
845 (2d Cir. 1992).  Such a finding would give rise to a
malicious prosecution claim.  <u>See generally</u> <u>Golino v. City of New</u>
<u>Haven</u>, 761 F. Supp. 962, 970 (D. Conn. 1991).

However, the court did not rule that a <u>Franks</u> violation
occurred.  In addition, this court has determined that adding the
omitted information would not have changed the finding of
probable cause because none of the omitted information had any

21

bearing on Ortiz's version of events.  Because a finding of
probable cause existed to arrest Ortiz, the defendants' motion
for summary judgment on the plaintiffs' § 1983 claim based on
malicious prosecution is granted.

     C.   First Amendment Retaliation

    In support of their § 1983 claim based on a First Amendment
violation, the plaintiffs allege that the defendants removed them
from the town's towing list in retaliation for Ortiz's complaint
against Cpl. Gugliotti.  The defendants, on the other hand, argue
that the plaintiffs were removed from the list for numerous
violations of the towing Policy.  Further, they argue that the
plaintiffs cannot prove the essential element of such a claim:
that their removal from the towing list chilled their speech in
any way.

    To prevail on a § 1983 First Amendment retaliation claim,
the court must first determine whether the plaintiff is a public
employee speaking on matters of public concern or whether he is
simply speaking as a private citizen.  See Morrison v. Johnson,
429 F.3d 48, 51 (2d Cir. 2005).  The defendants acknowledge that
Ortiz had a First Amendment right to file a civilian complaint
with the police, but they urge the court to use the private
citizen test, which means that Ortiz must prove: "(1) he has an
interest protected by the First Amendment; (2) defendants'
actions were motivated or substantially caused by his exercise of

22

that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." _Curley v. Village of Suffern_, 268 F.3d 65, 73 (2d Cir. 2001). However, according to the Second Circuit, an owner of a towing company having an informal towing arrangement with a town is a public employee for the purposes of First Amendment retaliation analysis.[7] _See White Plains Towing Corp. v. Patterson_, 991 F.2d 1049, 1059 (2d Cir. 1993) (holding that "although Cherico was not an employee of the State Police and had no formal franchise from or contract with the state, we will assume for purposes of First Amendment analysis that . . . the [tow] assignment to Cherico was tantamount to employment."). Moreover, the Second Circuit has also explained that the _Curley_ test does not apply in the context of a public employee who has suffered an adverse employment action as a result of exercising his First Amendment rights. _See Morrison_, 429 F.3d at 51. Accordingly, Ortiz is not obligated to show that the defendants' alleged retaliation caused a chilling effect on his speech. _See Gill v. Pidlypchak_, 389 F.3d 379, 382 (2d Cir. 2004) (noting that "it is well-settled that public

---

[7] Defendants and plaintiffs both seem to advocate the use of the private citizen test set forth in _Curley_ and agree that Ortiz meets the first prong of that test, namely engaging in protected speech. However, as stated above, it does not apply to Ortiz because his contract with Stratford made him a public employee for purposes of a First Amendment retaliation analysis. _See White Plains Towing Corp. v. Patterson_, 991 F.2d 1049, 1059 (2d Cir.), _cert. denied_, 510 U.S. 865 (1993).

employees alleging retaliation for engaging in protected speech are not normally required to demonstrate a chill subsequent to the adverse action taken against them").  The court therefore will not apply the <u>Curley</u> test to Ortiz's retaliation claim.

Rather, to prove retaliation under the test that applies to public employees, Ortiz must show: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action."  <u>Johnson v. Ganim</u>, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotations and citations omitted).  If a court were to presume that all of a public employee's speech involved matters of public concern, it "would mean that virtually every remark - and certainly every criticism directed at a public official - would plant the seed of a constitutional case."  <u>Cobb v. Pozzi</u>, 363 F.3d 89, 104 (2d Cir. 2004) (citing <u>Connick v. Myers</u>, 461 U.S. 138, 149 (1983)).  In addition, "the public employer may still prevail if it demonstrates that it would have taken the same adverse action in the absence of the protected speech." <u>Fago v. City of Hartford</u>, No. 302CV1189(AHN), 2006 WL 860126, *8 (D. Conn. Mar. 31, 2006)(citing <u>Mandell v. Cnty. of Suffolk</u>, 316 F.3d 368, 384 (2d Cir. 2003).

Under the first prong of the test, a personal or financial

interest may have been a motivating factor behind Ortiz's civilian complaint, because Cpl. Gugliotti's statements at the accident scene regarding towing laws and fees could have adversely impacted Ortiz's business financially if the driver consequently had refused to allow Ortiz to tow his car.[8]  Indeed, if Cpl. Gugliotti routinely informed drivers that Ortiz's fees were incorrect, it might motivate Ortiz to prevent future misstatements.  "The test [for public concern] is whether, as a matter of law, 'the content, form and context of a given statement, as revealed by the whole record,' constitute speech on a matter of public concern."  <u>Giacalone v. Abrams</u>, 850 F.2d 79, 86 (2d Cir. 1988) (quoting <u>Connick</u>, 461 U.S. at 147-48 & n.7); cf. <u>Ezekwo v. NYC Health & Hospitals Corp.</u>, 940 F.2d 775, 781 (2d Cir.), <u>cert. denied</u>, 502 U.S. 1013 (1991) ("[Plaintiff] was not on a mission to protect the public welfare.  Rather, her primary aim was to protect her own reputation and individual development as a doctor.").  The Second Circuit has held:

> [T]he State's burden in justifying a particular
> discharge varies depending upon the nature of the
> employee's expression, . . . , and the court must thus
> perform a balancing analysis, measuring, inter alia,
> the extent to which the employee's speech touched upon
> matters of public concern against the extent to which
> the employee's conduct interfered with the functioning

---

[8] When asked if Cpl. Gugliotti "interfered with the performance of your business," Ortiz answered in the affirmative. (Ortiz Dep. 23:9-12).  Ortiz then stated, "I've had problems in the past with [Cpl. Gugliotti] quoting prices and telling people how much we should be charging . . . ." (Ortiz Dep. 24:8-10).

of the workplace.  Even as to an issue that could
arguably be viewed as a matter of public concern, if
the employee has raised the issue solely in order to
further his own employment interest, his First
Amendment right to comment on that issue is entitled to
little weight in the balancing analysis.

White Plains Towing, 991 F.2d at 1058-59.  On the other hand,

Ortiz's complaint against Cpl. Gugliotti could be construed as

alleging that Gugliotti impugned his reputation.  In that case it

could be a matter of public concern, for a police department's

"performance of its duties is a matter of public concern, and

alleged defamation by . . . police officers of a citizen with

whom the police department is doing business may well be a matter

of interest to the community."  Id. at 1060.

But the distinction is not controlling because, as the

Second Circuit explained in White Plains Towing, even if the

Ortiz's speech was a matter of public concern, his claim

nonetheless fails if the defendants would have terminated the

plaintiffs from the towing list regardless of whether Ortiz had

filed the complaint against the police.  Id. at 1060-61.  Just as

the court found in White Plains Towing, the undisputed evidence

in this case shows that the plaintiffs would have been removed

from the towing list whether or not Ortiz filed the complaint.

The record establishes that the plaintiffs have had a

tumultuous relationship with the police department, particularly

Cpl. Gugliotti.  The undisputed evidence establishes that the

plaintiffs were removed from the towing list because of their

violations of the Policy.  In Karl's decision denying the plaintiff's appeal, he noted two separate customer complaints lodged with the police department against Ortiz's towing companies for incorrect fees, Ortiz's failure to register Santiago as a new tow truck driver with the police department as required by the Policy, as well as Ortiz's admitted use of profanity at the accident scene during his confrontation with Cpl. Gugliotti.  Karl went on to note that, because of these violations, "the Chief of Police chose to suspend City Line as is his prerogative under the policy."  In the view of the police department, it was reasonable to suspend Ortiz and his companies.  The court notes that the plaintiffs have offered no evidence in this case to refute Karl's findings.

Indeed, the Policy specifically states that "failure to provide such information (new tow truck driver) may be the basis for removal from the list . . . ," and that tow truck drivers shall conduct themselves "in a businesslike manner."  Though it seems that the defendants discovered Santiago's status as a new tow truck driver during the incident that led to Ortiz's civilian complaint, given that police officers and tow truck drivers both report to the scene of an accident, the defendants eventually would have discovered Santiago's status.  In addition, the decision to remove the plaintiffs from the list did not occur immediately after Ortiz filed his complaint.  Ortiz filed his

complaint on September 20, 2006, he submitted his sworn statement on December 7, 2006, and Capt. DeLieto prepared an affidavit in support of the arrest warrant on March 2, 2007.  The plaintiffs were removed only after the police department launched an internal investigation in response to Ortiz's complaint and then determined that there was probable cause to issue a warrant for Ortiz's arrest for making a false statement in conjunction with the investigation.  During that investigation, Ortiz admitted using profanity against a police officer and the police discovered that he had failed to list Santiago as an approved tow truck driver.  The plaintiffs provide no reason to doubt that this information, along with previous customer complaints for excessive fees, were the motivating factors for removing the plaintiffs from the list, regardless of the contents of Ortiz's civilian complaint.  Accordingly, the defendants' motion for summary judgment is granted as to the plaintiffs' claim for retaliation.

D.    Procedural Due Process

The plaintiffs claim that after their removal from the towing list, they appealed in writing to Mayor Miron for a due process hearing but he "intentionally and maliciously ignored [the plaintiffs'] request and for months refused to conduct a hearing."  Compl. ¶¶ 19, 20, & 26.  The defendants argue that the plaintiffs had no protected property interest in their slots on

the towing list, and even if they did, they received all the process they were due.

"[T]he Fourteenth Amendment's Due Process Clause requires [a court] to (1) determine whether the claimant has a property interest, then (2) determine whether [he] received adequate process before being deprived of that interest." Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 212 (2d Cir. 2003) (citing Ciambriello v. Cty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002)). "While property interests are constitutionally protected, they are not generally constitutionally established." Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005) (emphasis in original). Rather,

> property interests under the Due Process Clause are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. To determine whether a contractual right can be characterized as a constitutionally protected property interest, a court must look to whether the interest involved would be protected under state law and must weigh the importance to the holder of the right. However, not every contractual benefit rises to the level of a constitutionally protected property interest.

Harhay, 323 F.3d at 212 (internal quotations omitted) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 782, 783 (2d Cir. 1991)).

In the context of employment, "a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship

without cause." <u>Legg v. DellaVolpe</u>, 228 F. Supp. 2d 51, 61 (D. Conn. 2002) (quoting <u>S & D Maintenance Co. v. Goldin</u>, 844 F.2d 962, 967 (2d Cir. 1988)).  However, an interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause." <u>R & E Towing Recovery & Auto Sales, Inc. v. Grimaldi</u>, No. 92 Civ. 8014(MBM), 1994 WL 570878 at *3 (S.D.N.Y. Oct. 17, 1994), aff'd 60 F.3d 810 (2d Cir. 1995)(citing <u>Walentas v. Lipper</u>, 862 F.2d 414, 418 (2d Cir. 1988) (distinguishing between "breach of an ordinary contract right and the deprivation of a protectible property interest"), <u>cert. denied</u>, 490 U.S. 1021 (1989).  In addition, the Second Circuit explained in <u>S & D Maintenance Co., Inc. v. Goldin</u>, 844 F.2d 962, 967 (2d Cir. 1988), "we hesitate to extend the doctrine [of procedural due process] to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a government contractor."

Here, the facts differ somewhat from other cases involving the property interest of towing companies to remain on a towing list.  In <u>White Plains Towing</u>, the plaintiff company had an indefinite, oral arrangement with the state police to provide towing services on a specific portion of Interstate 287.  The court found such an "informal arrangement" to be "terminable at will" or simply "at the whim of an other person" and thus the

plaintiffs were not deprived of a property interest protected by due process. <u>White Plains Towing</u>, 991 F.2d at 1062. In <u>Geiger v. Town of Greece</u>, the plaintiff towing company had entered into a written agreement with the town to provide towing services, but the agreement had lapsed, so that the parties were operating under an oral or implied contract with no specific duration. In addition, the agreement that the plaintiffs initially signed provided that the police chief could terminate the contract "at any time for any reason." As such, the court held that the plaintiffs did not have a property right deserving of due process. <u>Geiger</u>, No. 07-cv-6066(CJS), 2007 WL 4232717, at *10 (W.D.N.Y. Sept. 4, 2007). Similarly, where a towing company signed written guidelines promulgated by the town sheriff promising to adhere to the rules and regulations contained therein, the towing company had no protectable property interest where the company could be removed at "the sole discretion of the sheriff." <u>R & E Towing Recovery Auto Sales</u>, 1994 WL 570878 at *10.

In this case, the police department issued a towing policy ("Policy") pursuant to a town ordinance authorizing the creation of a towing list.[9] The Policy stated that all towing companies that desired to be on the list had to sign a written agreement with the town and follow the guidelines in the Policy to remain

---

[9] Stratford, Conn. Ordinance, ch. 196 (1997).

on the list.  In exchange, they would be called on a rotational basis to perform nonconsensual tows within Stratford.  The plaintiffs, along with other towing companies on the list, failed to sign a written agreement and therefore had an "informal arrangement" with the town with an indefinite termination date. The town acknowledges that the plaintiffs were on the approved towing list, and referred to the relationship between the plaintiffs and the town as contractual in nature.  However, the Policy specifically states that the chief of police may remove or suspend towing operators from the list "for cause at any time" if a tow operator violates "any portion of this policy, State Law, or Town Ordinance, or fails to continually perform in a satisfactory manner."  Here, the plaintiffs' rights were not the subject of one person's whim, because the chief of police did not have sole discretion over their removal.  Thus, it may be assumed that the plaintiffs had a property interest in remaining on the towing list, because they paid a yearly fee to remain on the list, the Policy provided for a "for cause" removal only and the towing companies had a right to appeal the decision to the Mayor.

However, the court need not decide this issue, because even if the plaintiffs have a constitutionally protected right in their place on the towing list, the plaintiffs received all of the process they were due.  To determine the level of process the plaintiffs were due, the court must consider the following:

> First, the private interest that will be affected by
> the official action; second, the risk of an erroneous
> deprivation of such interest through the procedures
> used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved
> and the fiscal and administrative burdens that the
> additional or substitute procedural requirements would
> entail.

Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 213 (2d

Cir. 2003) (citing Mathews v. Eldridge, 424 U.S. 319, 335

(1976)).  First, plaintiffs have a financial interest in their

place on the towing list, though it is unclear to what degree and

how much business revenue the list generated for the plaintiffs.

Indeed, according to the plaintiffs' accountant, he could not

state with a reasonable degree of accounting certainty what the

plaintiffs' difference in income would have been had they

remained on the town's towing list.  (Dains Dep. 71:17-23).

Second, though the chief has sole discretionary authority to

remove the plaintiffs from the list, the removal must be for

cause.  Dep. Chief LoSchiavo set forth his reasons for the

removal, listing the plaintiffs' violations of the Policy.  Thus,

their removal was "for cause," because the Policy states that the

chief of police has cause to remove a towing company that

"violates any portion of this policy." (LoSchiavo Aff. Ex. B at

5)(emphasis added).

In addition, the Policy provides for an informal meeting

with the chief of police to discuss the suspension decision and

the right to appeal their suspension to the Mayor. Though they did not seek a meeting with the chief, the plaintiffs admit that the letter they received informing them of their suspension stated that they could appeal the police chief's decision to the Mayor and they promptly did so.[10]

With respect to the current procedures, the plaintiffs complain only that the Mayor was too slow in providing them with a hearing. However, the plaintiffs do not propose any additional pre- or post-deprivation procedural safeguards and thus their constitutional claim must fail. See Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206 (2d Cir. 2003)(holding that the plaintiff's claim that she was denied due process was denied because she failed to "challenge the adequacy of the process available to her under the CBA, [or] . . . argue that any additional process was due"). Indeed, a postdeprivation review procedure satisfies the requirements of due process where the parties are "entitled to present evidence and argument, cross-examine witnesses and inspect relevant documents in the possession of the parties." Adoption Servs. of Conn., Inc. v. Ragaglia, 178 F. Supp. 2d 139, 148-49 (D. Conn. 2001) (holding that after an adoption agency's license was suspended, a

---

[10] The Stratford ordinance states that aggrieved individuals can appeal to the "Town Manager." Stratford adopted a new town charter effective December 12, 2005 which abolished the town manager position and created the elected office of mayor, who serves a similar if not identical role to that of town manager.

postdeprivation hearing held 40 days after the suspension was sufficient to satisfy due process); see Campo v. New York City Employees Ret. Sys., 843 F.2d 96 (2d Cir.) (holding that no violation of due process occurred even though no predeprivation hearing was held after failure to pay survivor benefits), cert. denied, 488 U.S. 889 (1988); Signet Constr. Corp. v. Borg, 775 F.2d 486 (2d Cir. 1985) (holding that a predeprivation hearing was not required to satisfy due process before a city board withheld contract payments to the plaintiff).

The plaintiffs appealed their suspension and removal on March 28, 2007 and a hearing was held on the appeal on June 18, 2007, less than 12 weeks later. Further, Mayor Miron appointed an independent party to preside over the hearing, which lasted several days and afforded the plaintiffs the opportunity to present and cross-examine witnesses and offer additional evidence and arguments.[11] The hearing officer issued a written decision denying the plaintiffs' appeal, stating: "it was [Ortiz's] conduct, not his the arrest which gave rise to the grounds for the suspension." He noted that two customers of Ortiz's towing companies had lodged complaints with the police department for incorrect fees, Ortiz had failed to register Santiago as a new tow truck driver with the police department as required in the

---

[11] Little more than two months passed from the Mayor's receipt of the plaintiffs' appeal to the date of the hearing on June 8, 2007.

Policy, and Ortiz admitted using profanity at the accident scene during his confrontation with Gugliotti, all in violation of the Policy. Accordingly, the plaintiffs were not deprived of their place on the towing list without due process and the court grants summary judgment on this claim.

D. Qualified Immunity

The plaintiffs have sued Capt. DeLieto, Dep. Chief LoSchiavo, Chief Buturla and Mayor Miron in their individual capacities under § 1983 for their roles in Ortiz's arrest, prosecution and removal from the towing list. The defendants argue that the conduct of these officials was objectively reasonable and did not violate clearly established constitutional rights. In addition, they point out that three of the defendants did not personally participate in the alleged constitutional wrongs that Ortiz claims that he suffered.

Qualified immunity entitles public officials to freedom from suit for performing discretionary functions if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996). The shield of qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 353, 341 (1986).

1. Capt. DeLieto

Capt. DeLieto argues that, as part of his official duties, he had probable cause to seek a warrant for Ortiz's arrest and therefore is entitled to qualified immunity. The plaintiffs counter that the state prosecutor nolled the charges because of a violation pursuant to Franks v. Delaware, 438 U.S. 154, 155-56 (1978), and he therefore is not entitled to qualified immunity.

To receive qualified immunity, Capt. DeLieto must meet the two-prong test showing that he did not violate clearly established rights and his actions were objectively reasonable. Weyant, 101 F.3d at 857. There can be no question that the right not to be arrested without probable cause is one that is clearly established. See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997); Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994) ("It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause.").

As to the second element of whether an officers' conduct is objectively reasonable in the context of an arrest, an officer is entitled to qualified immunity if he had "arguable" probable cause, meaning either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d

Cir. 2004) (citing <u>Golino</u>, 950 F.2d at 870).

Here, Capt. DeLieto's affidavit caused a judge to issue a warrant for Ortiz's arrest.  A warrant issued by a neutral magistrate normally creates a presumption of probable cause that creates a "heavy burden" for the plaintiff to refute.  <u>See</u> <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991).  The plaintiff can overcome that burden only if he can make a "substantial preliminary showing" that the affiant knowingly or recklessly omitted material information "necessary to the finding of probable cause."  <u>Id.</u> at 870-71 (quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978)).  The standard articulated in <u>Franks</u> also "defines the scope of qualified immunity in civil rights actions."  <u>Rivera</u>, 928 F.2d at 604.  This means that "[w]here an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, the shield of qualified immunity is lost." <u>Rivera v. United States</u>, 928 F.2d 592, 604 (2d Cir. 1991).

As determined above, when Capt. DeLieto compared Cpl. Gugliotti's audio recording with Ortiz's sworn statement, he had reason to believe that Ortiz had committed the crime of false statement in the second degree.  Adding the omitted information to Capt. DeLieto's affidavit would not change the finding of probable cause; indeed, adding Ortiz's civilian complaint, in which he excludes any mention of Cpl. Gugliotti's use of

profanity, yet states that Cpl. Gugliotti is abusive and out of
control, contradicts both the recording of the incident and his
sworn statement.  Whether Cpl. Gugliotti recited towing laws
incorrectly is also immaterial to whether Capt. DeLieto formed a
reasonable belief that Ortiz made a false statement under oath.
As previously noted, the state court did not rule on Ortiz's
motion to dismiss pursuant to a <u>Franks</u> violation and this court
found that, based on the evidence before it, no such violation
occurred.  Accordingly, it was objectively reasonable for Capt.
DeLieto to seek an arrest warrant based on the information that
he had at that time.

In addition, the plaintiffs' mere assertion that Capt.
DeLieto had some sort of improper motive is insufficient to
withstand a summary judgment motion in which a defendant alleges
qualified immunity.  On this issue, the Second Circuit has
stated:

> If the conduct was objectively reasonable, a conclusory
> proffer of an unconstitutional motive should not defeat
> the motion for summary judgment.  The reasonableness of
> the conduct is itself substantial evidence in support
> of the motion and requires in response a particularized
> proffer of evidence of unconstitutional motive.
> Otherwise, the qualified immunity defense would be
> hollow indeed.  Officials, who may in the course of
> carrying out their duties have continuing run-ins with
> those whose conduct the officials must monitor, will be
> forced to go to trial when the only evidence of
> unconstitutional motive may be a prior dispute with the
> plaintiff, if that.

<u>Blue v. Koren</u>, 72 F.3d 1075, 1084 (2d Cir. 1995).  This seems to

describe accurately the interactions here between Ortiz and the Stratford police department. Moreover, once it has been established that probable cause existed for the arrest, the court will not inquire into the underlying motive for the arrest. <u>See Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 120 (2d Cir. 1995). Capt. DeLieto is therefore entitled to qualified immunity and summary judgment should be granted in his favor with respect to claims against him in his individual capacity.

 2. <u>Mayor Miron, Chief Buturla, and Dep. Chief Loschiavo</u>

The plaintiffs claim that Dep. Chief LoSchiavo and Mayor Miron suspended and removed them from the towing list for the sole purpose of retaliating against them for the civilian complaint Ortiz filed against Cpl. Gugliotti. The defendants counter that the plaintiffs were removed from the towing list because Ortiz violated several requirements listed in the towing Policy, and that Chief Buturla, Mayor Miron and Dep. Chief LoSchiavo were not involved in the decision to suspend and remove the plaintiffs from the towing list.

 a. <u>Dep. Chief LoSchiavo</u>

The defendants maintain that Dep. Chief LoSchiavo was simply following Chief Imbro's orders when he wrote the letter informing the plaintiffs that they were no longer on the towing list. They argue that Dep. Chief LoSchiavo did not independently decide to

remove the plaintiffs from the towing list. Though the Policy states that the chief of police has sole discretionary authority to remove companies from the towing list, "[a]ny power or authority given to the Chief of Police herein may be exercised by an officer of the Department designated by the Chief of Police." Dep. Chief LoSchiavo surmises that Chief Imbro asked him to write the March 26, 2007 letter because Chief Imbro planned to retire on March 31, 2007.

A defendant's personal involvement "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994), abrogated on other grounds, Sandin v. Conner, 515 U.S. 472 (1995). Here, Dep. Chief LoSchiavo was personally involved in suspending Ortiz from the towing list. He clearly states in the letter to Ortiz that "I have concluded that I have cause to suspend your towing contract with the Town of Stratford . . . ." He states that he made the decision, and does not mention Chief Imbro. Accordingly, the court must now consider whether his conduct violated a clearly established constitutional right.

Allowing an individual to exercise his First Amendment rights without retaliation is a clearly established constitutional right. See Crawford-El v. Britton, 523 U.S. 574, 592 (1998). However, "there may be doubt as to the illegality of

41

the defendant's particular conduct (for instance, whether a plaintiff's speech was on a matter of public concern)." Id. In addition, even if a public employee is able to demonstrate that his protected speech was a 'motivating factor' in an adverse employment decision, "the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct." Id. (citing Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977).

In his letter to the plaintiffs, Ortiz, LoSchiavo notes that Santiago was not registered as a new driver, customer complaints had been lodged against the plaintiffs, and a warrant had issued for Ortiz's arrest for making a false statement against a police officer. What is notably absent is any reference to the fact that Ortiz complained about Gugliotti's incorrect recitation of towing laws, which Ortiz claims was the sum and substance of his complaint. Dep. Chief LoSchiavo was more concerned that a judge had issued a warrant for Ortiz's arrest based on false statements and the numerous other violations Ortiz and his companies had committed. Based on the information available to him at the time, even if Dep. Chief LoSchiavo violated a clearly established constitutional right, based on the content of Ortiz's speech, Dep. Chief LoSchiavo may not have assumed that it pertained to matters of public concern, and it was objectively reasonable for Dep. Chief LoSchiavo to suspend the plaintiffs from the towing

list.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987).  As
such, Dep. Chief LoSchiavo is entitled to qualified immunity.

### b.  Mayor Miron

The defendants note that, though Mayor Miron was aware of
the plaintiffs' suspension and removal because he was copied on
Dep. Chief LoSchiavo's letter, he had no reason to suspect that
there was any improper or unconstitutional motive behind the
plaintiffs' removal.  He then appointed an independent hearing
officer to preside over the hearing on the plaintiffs' appeal of
Chief Imbro's decision.  Accordingly, the defendants argue that
summary judgment should be granted on this claim because Mayor
Miron was not involved in the decisionmaking process of either
the plaintiff's removal or their subsequent appeal.  The court
agrees.

Mayor Miron was only aware that, based on Dep. Chief
LoSchiavo's letter, the plaintiffs had been removed from the
towing list because Ortiz had violated the Policy, filed a false
complaint with the police department and that the town had
received other complaints regarding his business practices.  In
addition, Mayor Miron did not preside over the hearing on appeal;
rather, he appointed Karl to preside in his stead.  Mayor Miron's
involvement was so minimal that it cannot be said that he was
personally involved in the plaintiffs' removal from the towing
list, nor did he know that any retaliatory, improper motives were

the basis for their removal.  See Wright, 21 F.3d at 501-02
(holding that where a prisoner was held in a special housing unit
for 67 days without a hearing, wrote a letter to Governor Cuomo
and copied the prison commissioner complaining generally of the
conditions at the prison but did not mention his failure to
receive a hearing, the commissioner was not on notice of the
unconstitutional actions of the prison); Roucchio v. Coughlin, 29
F. Supp. 2d 72, 82 (E.D.N.Y. 1998) (holding that where a prison
official delegated his review of an appeal to another official,
he was not involved in the decision denying the appeal and
therefore entitled to qualified immunity). Accordingly, Mayor
Miron is entitled to qualified immunity and summary judgment is
granted as to the claims against him in his individual capacity.

c.   Chief Buturla

The plaintiffs argue that Chief Buturla further retaliated
against them after their removal from the towing list when he
offered to reinstate them to the list in exchange for executing a
release of claims in favor of the police department and its
officers.  The defendants counter that this was an offer to
settle Ortiz's imminent lawsuit against the police department and
the town.

The parties do not dispute that Chief Buturla became police
chief shortly before this lawsuit was filed, was not part of the
decision to remove the plaintiffs from the towing list, and was

not involved in Ortiz's arrest.  Ortiz appealed the decision of former Chief Imbro to the Mayor and a separate decision was made upholding the plaintiffs' removal from the list.  Ortiz admitted in his deposition that Chief Burturla "has nothing to do with this."  Ortiz then elaborated: "Honestly, he wasn't even there when this hit the fan."  (Ortiz dep. 98:4-9).

Chief Buturla's actions were not based on Ortiz filing his civilian complaint.  Rather, Chief Buturla was aware that Ortiz planned to file a lawsuit against the town and, in his capacity as chief, made an offer of settlement that would reinstate the plaintiffs to the town towing list in exchange for the plaintiffs' agreement not to sue.  Fed. R. Evid. 408 explicitly provides that offers to compromise are not admissible "on behalf of any party, when offered to prove liability for . . .  a claim."  If the court found this to be retaliation, it would have the effect of discouraging efforts to settle claims before a potential plaintiff brings suit.  See Manko v. United States, 87 F.3d 50, 54 (2d Cir. 1996) (noting that "[t]he primary purpose" of Fed. R. Evid. 408, which provides that certain evidence of settlement offers and negotiations is inadmissible, "is the promotion of the public policy favoring the compromise and settlement of disputes that would otherwise be discouraged with the admission of such evidence."); E-Z Bowz, L.L.C. v. Prof. Prod. Research Co., Inc., No.00Civ8670(LTS)(GWG), 2003 WL

22416174, *1 (S.D.N.Y. Oct. 23, 2003)(noting that "offers of settlement are inadmissible under Fed. R. Evid. 408 and are therefore inadmissible under Fed. R. Civ. P. 56(e)").

Chief Buturla's offer of compromise is not admissible as evidence of further retaliation in this case. Given that the plaintiffs have provided no further evidence of his involvement in the case aside from his attempt to settle the matter in his official capacity as chief of police, Chief Burturla is entitled to qualified immunity and the defendants' motion for summary judgment on the claim against him in his individual capacity is granted.

F. <u>Municipal Liability</u>

In their complaint, the plaintiffs allege a <u>Monell</u> claim against the town for all of the constitutional violations discussed above. The plaintiffs allege that they suffered an unconstitutional act pursuant to an official policy or custom promulgated by its "policymakers." <u>See</u> <u>Wilson v. City of Norwich</u>, 507 F. Supp. 2d 199, 206 (D. Conn. 2007) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978)). "Actions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim." <u>Anthony v. City of New York</u>, 339 F.3d 129, 139 (2d Cir. 2003) (citations omitted). The court first must identify the final policymaker for purposes of the plaintiff's removal for the

towing list.  See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  This is a question of law for the court to decide. Id.

However, the court has determined above that the plaintiffs' constitutional rights were not violated and all of the individuals that the plaintiffs sued are entitled to qualified immunity.  Hence, there is no need to determine the town's liability under § 1983.  See generally Russo v. City of Hartford, 341 F. Supp. 2d 85, 124-25 (D. Conn. 2004) ("given that the court has granted summary judgment on all of the constitutional claims asserted by [plaintiffs], the claim against the City must fail").

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [doc. # 35, 46] is GRANTED.  All of the defendants sued in their individual capacities are entitled to qualified immunity.  Further, the defendants' motion to strike [doc. # 61] is GRANTED and the plaintiffs' motion to strike [doc. # 67] is DENIED AS MOOT.  The Clerk shall enter judgment for the defendants and close the case.

SO ORDERED this 10th day of October 2008, at Bridgeport, Connecticut.

/s/_____
          Alan H. Nevas
          United States District Judge

_____